VEY *v.* THE STATE OF OHIO.

(Decided October 21, 1929.)

*Mr. James T. Cassidy,* for plaintiff in error.
*Mr. Ray T. Miller* and *Mr. David R. Hertz,* for defendant in error.

LEVINE, J.   Plaintiff in error, John J. Vey, was convicted in the common pleas court on an indictment wherein he was charged with the crime of maiming, in this, to wit, that on the evening of November 21, 1928, he, with malicious intent to maim or disfigure, threw upon the person of his former wife a corrosive acid so as to disfigure her.

Various assignments of error are set forth in argument and brief of counsel.   The theory of the state, which it sought to substantiate by testimony, was as follows:   That John J. Vey on the evening of November 21, 1928, suddenly encountered his

former wife on Lincoln avenue, in the city of Lakewood, at about dusk. He was then clad in a light topcoat, although the weather was cold and snow was falling. A conversation ensued wherein she asked him where his overcoat was. He told her that he had pawned it and was in need. She then opened her pocketbook to get some money to give him with which he might buy food. While she bent over the pocketbook, she suddenly felt a "ball of fire" strike her face, which later proved to be sulphuric acid. She then fled from the scene, reaching home almost blind, where she was given some treatment and then rushed to the hospital.

Mrs. Vey, while on the witness stand, in substance gave the above testimony. In addition, the state depends upon corroborating inferences which it seeks to draw from the exhibits in the case. The pocketbook which was presented and received in evidence showed acid burns on its inside; the hat which she wore showed that the acid moved in a generally upward direction, striking the hat on its lower surface; her coat also showed acid burns, indicating that the acid had traveled in a generally upward direction; and the photograph of Mrs. Vey, showing the injuries wrought by the acid upon her face and neck, was introduced in evidence for the purpose of showing that no trifling amount of acid reached her face, as might be expected in an unintentional accident, and also to show that the acid moved in a generally upward direction.

In further corroboration of the state's theory there was introduced the signed statement of the accused, which he executed shortly after the alleged crime was committed, the substance of which is to the effect that he had said, "I threw the acid."

To refute the state's theory, the accused took the witness stand in his own behalf. In his testimony he denied that he said that he had pawned his overcoat. He stated that he had money in his possession and did not tell his wife that he was in need; that he was about to commit suicide by swallowing the acid in front of his former wife, when she, to prevent him, interrupted the course of his hand to his mouth, thereby spilling the acid so that it reached her face, her coat, and her hat. As a corroborating circumstance of the statement set forth by the accused, counsel for the accused points to the fact that the accused, Vey, received some of the acid about his person.

As bearing upon the evidence offered by both sides, our attention is directed to the reappearance of Mrs. Vey upon the witness stand, when, upon being examined by counsel for the accused, she stated: "Oh, I want to say I know Jack didn't do it intentionally. I know that acid didn't get at me intentionally. He has been so good to me always. He wouldn't have done it." It is urged that in view of this last statement of hers on the witness stand the verdict of the jury is manifestly against the weight of the evidence. It will be noted that when Mrs. Vey first appeared on the witness stand to give her testimony in behalf of the state she gave the detailed statement above referred to, setting forth in logical order just how the acid throwing happened. Her last statement is not of much value for the reason that she did not seek to refute her former testimony, but merely expressed an opinion that "Jack did not do it intentionally." Not in one iota did

she change her narrative first given while on the witness stand.

The presence of the acid on the person of the accused, Vey, does not necessarily corroborate the theory of the defense that this was not an intentional throwing of acid, but merely an accident. The acid came from a small bottle in which it had been contained. The back splash, which is bound to occur when the acid is thrown from so small a bottle, would in itself fully account for the presence of acid upon the person of the accused. Further, while the evidence is silent as to what Mrs. Vey did when she felt the "ball of fire" upon her face, it is not improbable that she made an involuntary gesture, subconsciously in her own defense, which gesture, if made, would have had the effect of directing some of the acid upon the accused, her assailant.

Had Mrs. Vey, when she reappeared to testify at the end of the trial, either refuted her first narrative by giving another version of the occurrence, or by stating that she did not in truth remember how it happened, then the entire structure of the state would have been weakened to such an extent as to cause the entire case to collapse. She did not do either. She merely expressed an opinion that she knew that Jack "didn't do it intentionally," because he had always been so good to her and "wouldn't have done it."

We are unable to disturb the verdict of the jury upon the ground that its verdict was manifestly against the weight of the evidence.

Another assignment of error is that the defense introduced affirmative evidence of the insanity of the accused, and that no evidence was offered by the

state as to the mental condition of the accused. It is therefore argued that the accused was entitled to an acquittal on the defense of insanity, there being evidence to support the theory of the defense on that point and none offered on the part of the state.

It must be borne in mind that the jury is, after all, the sole judge of the credibility of witnesses. The jury may in its discretion disregard evidence given by a witness, lay or expert, if in its opinion the same is not worthy of credit, even though no opposing evidence is offered. The expert called by the defense to substantiate its claim of insanity was a Dr. Elder, who testified that he made an examination of the accused a considerable time after the acid throwing occurred. He stated that in his opinion Vey was insane to the point of being unable to distinguish between right and wrong. Dr. Elder in his testimony did not identify Vey's insanity as being of any special kind. It is well known that insanity may be diversified and classified. Dementia-praecox, melancholia, mania, paranoia, and paresis are examples of the different and diversified classes of insanity. The only reason given by the doctor in support of his theory was that the fact that Vey had committed the crime indicated that he was insane. It is true that the doctor did not say that any one who committed a crime is insane, but he did say that this particular individual must have been insane because he committed the crime.

There was evidence of an attorney by the name of Mr. Amram tending to show that it was his impression that the accused was suffering from a mental disorder. As against this evidence seeking to

substantiate the defense of insanity, we have the following:

1.  Mrs. Vey's account of his acts and conversation at the time she met him, and immediately preceding the throwing of the acid.

2.  His own account of his acts and conversation at the time.

3.  His ability to recall in minute detail all incidents which occurred.

4.  The account given by the police officers of Vey's conduct immediately after the acid throwing.

The jury was authorized, even in the absence of evidence by the state on the question of the mental condition of the accused, in disregarding the conclusions given by the doctor and the lawyer and basing its judgment upon the other circumstances which came to its knowledge.

Another assignment of error is that the court erred in failing to call the doctors appointed to examine the accused to testify at the trial of this case. We are referred to Section 13608, General Code (112 Ohio Laws, 168), effective as of July 27, 1927, which provides in substance that when, upon arraignment or the calling for trial of the defendant indicted for a criminal offense, immunity from pleading to the indictment is claimed on behalf of the defendant on the ground that he is at the time insane, such claim shall be made in writing, signed by defendant's counsel and supported by the certificate of a reputable physician, both to be filed as part of the record in the case; and which further provides that whenever upon arraignment, or the calling for trial of the defendant so indicted, the defendant shall plead not guilty, if the existence of insanity in the defendant

at the time of the commission of the alleged offense is to be claimed as a defense, "the defendant, by counsel, shall in writing * * * notify the judge of his intention to make such defense, which notice to the judge shall be filed as part of the record in the cause."

It further provides that the judge of the trial court shall appoint one or more disinterested qualified physicians to testify as experts at such trial, and shall immediately notify counsel of the persons so appointed, giving their names and addresses. It further provides that the expert witnesses appointed by the court may be examined regarding their qualifications and their testimony by counsel for the prosecution and the defense, and the power herein granted to appoint experts shall apply to the trial under the indictment as well as to the trial on the question of defendant's mental condition.

It will be noted that under this section as it then existed the court was empowered to appoint experts to examine into the mental condition of the accused, the section providing that whenever there is filed with the court at the time of arraignment of the defendant a claim of immunity from pleading to the indictment, on the ground that he is, at the time of arraignment, insane, before it becomes the duty of the court to appoint experts this claim in writing, signed by defendant's counsel, must be supported by a certificate of a reputable physician, and both be filed as part of the record in the case.

It will also be noted that the section provides that if upon such arraignment the defendant shall plead not guilty, then if the existence of insanity in the defendant, at the time of the commission of the alleged

offense, is to be claimed as a defense, the defendant, by counsel, shall in writing notify the judge of his intention to make such defense, which notice to the judge shall be filed as part of the record in the case, and that thereafter the trial judge shall appoint one or more disinterested, qualified physicians to examine into the mental condition of the accused and to testify as experts at such trial.

It will further be noted that if upon arraignment, after a plea of not guilty by defendant, insanity is to be relied upon by counsel for defendant, as a defense to the indictment, namely, that the accused was insane at the time of the commission of the crime, all that is necessary in such case is for the attorney to file with the trial judge a notice in writing to that effect, which apparently need not be accompanied by the certificate of a reputable physician. The additional prerequisite of the certificate of a reputable physician is, under the wording of the statute, applicable only to cases where, upon arraignment, the defendant seeks immunity from pleading to the indictment on the ground that he is at the time insane. It is the contention of the accused that the provisions of the section are mandatory and that the court was required to see to it that these doctors testified.

It will be noted from the record that counsel for the accused at no time called the attention of the trial court to this omission to call the experts. Counsel for the accused apparently was quite content, if we judge from his conduct at the trial, when the court omitted the calling of the experts. So far as the record shows, we do not know whether any such examination was made, and if one was made, whether the experts formed any opinion on the sub-

ject or had anything to offer by way of testimony. As far as the record shows, counsel for the accused at no time inquired of the court as to whether any report, verbal or written, was brought in by the experts and as to the nature of the report. He proceeded with his defense of insanity in the usual manner, and introduced his own witnesses to substantiate such defense. It was clearly the duty of counsel for the accused, if he was to avail himself of the court's omission to call the experts to testify at the trial, to have called the court's attention to that subject, which, as far as the record shows, was not done.

Counsel for the state contend that this section deals only with the appointment of experts to testify at the trial wherein the only issue is the defendant's mental condition either at the time of arraignment or after a verdict of guilty, in which trial three-fourths of the jury can return a verdict, but that it does not apply to a case wherein insanity is claimed as a substantive defense to the indictment on the ground that the accused was insane at the time of the commission of the crime. The language of the section does not seem to support that interpretation, because in express language it is therein provided that "the power herein granted to appoint experts shall apply to the trial under the indictment as well as to the trial on the question of the defendant's mental condition." But the mandatory provision of the section, that "the judge of the trial court shall appoint one or more disinterested qualified physicians * * * to testify as experts at such trial," must not be so construed as to make mandatory the calling of the experts to testify at the trial. The

intention of the Legislature in passing this law was to make the matter of expert testimony neutral and disinterested, and to remove the evil often arising because of partisan expert testimony. The appointment of experts after a notice in writing signed by counsel for the accused is unquestionably mandatory, but we are inclined to believe that the actual calling of the experts to testify must be discretionary with the court. It often happens that the experts so appointed by the court have formed no opinion on this bewildering and most speculative subject of insanity. In such a case there would be no purpose in calling the experts merely to state that they can offer no opinion on the subject of the insanity of the accused. The purpose of this section, in our opinion, is merely to make such testimony available. Counsel for the accused unquestionably waived this irregularity, even if it be considered an irregularity, by not calling the attention of the trial judge to its omission and by failing to make the slightest inquiry as to whether the experts made the examination or had anything to report. He proceeded to trial, and concluded the same. Even after the verdict of guilty was returned by the jury this omission to call the experts was not brought to the attention of the trial judge in support of the motion for new trial filed by counsel for the accused. It is too late, in our opinion, for plaintiff in error to raise this question at this time.

Another assignment of error is the introduction of the photograph of the prosecuting witness taken two weeks after the accident. It is claimed that this had the effect of unduly prejudicing the minds of the jurors. We cannot agree with this view. In

view of the conflicting theories presented by the state and the defense as to how the acid came upon the face of the prosecuting witness, the state claiming that it was a deliberate and intentional act on the part of the accused, and the defense claiming that it was merely an accident, the introduction of the photograph showing the course that the acid took and the quantities which came upon the face of the prosecuting witness had probative value and bore logically upon the issue presented; that is, whether the acid was thrown or was the result of an accident, as claimed by the accused.

The perusal of the entire record leads us to believe that there is no error to be found in the record substantially affecting the rights of the accused, and the judgment of the common pleas court will therefore be affirmed.

*Judgment affirmed.*

VICKERY, P. J., and SULLIVAN, J., concur.